UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND MAGDALENO, | Case No. EDCV 16-2246 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| NANCY A. BERRYHILL,[1] Acting Commissioner of Social Security, | |
| Defendant. | |

## I.    SUMMARY

On October 26, 2016, Raymond Magdaleno ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; October 27, 2016 Case Management Order ¶ 5.

---

[1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Carolyn W. Colvin as the defendant in this action.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 26, 2013, plaintiff filed an application for Disability Insurance Benefits alleging disability beginning on January 31, 2011, due to a herniated disk, left knee problems, and psychological impairment. (Administrative Record ("AR") 22, 171, 200). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on March 23, 2015. (AR 39-63).

On June 18, 2015, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 22-32). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine and obesity (AR 24-27); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 27); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 27); (4) plaintiff could perform past relevant work as an office clerk (AR 31); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 28).

On September 28, 2016, the Appeals Council denied plaintiff's application for review. (AR 1).

///

---

[2]The ALJ determined that plaintiff could: (i) lift and/or carry at least 20 pounds occasionally and up to 10 pounds frequently; (ii) stand and/or walk for at least six hours out of an eight-hour workday; (iii) sit for at least six hours out of an eight-hour workday; and (iv) occasionally stoop and crouch. (AR 27).

III.    **APPLICABLE LEGAL STANDARDS**

      A.    **Sequential Evaluation Process**

      To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

      In assessing whether a claimant is disabled, an ALJ is required to use the following five-step sequential evaluation process:

      (1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

      (2)    Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

      (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

      (4)    Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

      (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work

experience, allow the claimant to adjust to other work that
exists in significant numbers in the national economy?  If so,
the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citations omitted); see also 20 C.F.R. § 404.1520(a)(4) (2012) (explaining five-step sequential evaluation process).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

While an ALJ's decision need not discuss every piece of evidence or be drafted with "ideal clarity," at a minimum it must explain the ALJ's reasoning with sufficient specificity and clarity to "allow[] for meaningful review."  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citations and internal

4

quotation marks omitted); <u>Hiler v. Astrue</u>, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation and quotation marks omitted).

An ALJ's decision to deny benefits must be upheld if the evidence could reasonably support either affirming or reversing the decision. <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. <u>Treichler v. Commissioner of Social Security Administration</u>, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) despite the error, the ALJ's path may reasonably be discerned, even if the ALJ's decision was drafted with less than ideal clarity. <u>Id.</u> (citation and quotation marks omitted). Nonetheless, a court may not affirm "simply by isolating a 'specific quantum of supporting evidence.'" <u>Id.</u> at 882 (citation omitted). In addition, federal courts may review only the reasoning in the administrative decision itself, and may affirm a denial of benefits only for the reasons upon which the ALJ actually relied. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

## IV.  DISCUSSION

Plaintiff essentially contends that the ALJ failed properly to consider certain medical opinions, and thus erroneously found no severe mental impairment at step two of the sequential evaluation process. (Plaintiff's Motion at 4-8). The Court agrees and finds that a remand is warranted because the ALJ's errors were not harmless.

### A.  Pertinent Law

#### 1.  Step Two

At step two, a claimant must present evidence of "signs, symptoms, and laboratory findings"[3] which establish a medically determinable physical or mental

---

[3]Medical "[s]igns are anatomical, physiological, or psychological abnormalities which can be . . . shown by medically acceptable clinical diagnostic techniques." 20 C.F.R.

(continued...)

impairment that is severe and, at least, has lasted or can be expected to last for a continuous period of at least twelve months.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1508, 404.1509, 404.1520(a)(4)(ii).

Step two is "a de minimis screening device [used] to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment is "not severe" only if the evidence establishes a "slight abnormality" that has "no more than a minimal effect" on a claimant's "physical or mental ability to do basic work activities."[4]  20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 153-54 & n.11 (1987) (Social Security claimants must make "*de minimis*" showing that impairment interferes with ability to engage in basic work activities) (citations omitted; emphasis in original); Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (citations and internal quotation marks omitted).

At step two, when determining whether a plaintiff's mental impairment is severe, an ALJ must evaluate the four broad functional areas known as "paragraph B" criteria, namely (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).  If the degree of limitation in the first three functional areas is "none" or "mild," and there are no episodes of decompensation,

---

[3](...continued)
§ 404.1528(b).  "Laboratory findings" include "anatomical, physiological, or psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques."  20 C.F.R. § 404.1528(c) (2006).  "Symptoms" are a claimant's "own description of [a] physical or mental impairment."  20 C.F.R. § 404.1528(a).

[4]"Basic work activities" are "the abilities and aptitudes necessary to do most jobs" including "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [¶] (2) Capacities for seeing, hearing, and speaking; [¶] (3) Understanding, carrying out, and remembering simple instructions; [¶] (4) Use of judgment; [¶] (5) Responding appropriately to supervision, co-workers and usual work situations; and [¶] (6) Dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b); see Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (same) (citations omitted).

a plaintiff's mental impairment is generally found "not severe" unless there is evidence indicating a more than minimal limitation in the plaintiff's ability to perform basic work activities.  See 20 C.F.R. § 404.1520a(d)(1).

When reviewing an ALJ's findings at step two, the district court "must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a medically severe impairment or combination of impairments."  Webb, 433 F.3d at 687 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.")).

## 2.  Medical Opinion Evidence

In Social Security cases, the amount of weight given to medical opinions generally varies depending on the type of medical professional who provided the opinions, namely "treating physicians," "examining physicians," and "nonexamining physicians" (e.g., "State agency medical or psychological consultant[s]").  20 C.F.R. §§ 404.1527(c)(1)-(2) & (e), 404.1502, 404.1513(a); Garrison, 759 F.3d at 1012 (citation and quotation marks omitted).  A treating physician's opinion is generally given the most weight.  20 C.F.R. § 404.1527(c)(2); Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks omitted).  In turn, an examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion.  Garrison, 759 F.3d at 1012 (citation omitted).

An ALJ may reject the uncontroverted opinion of an examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).  Where an examining physician's opinion is contradicted by

another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)) (quotation marks omitted).  An ALJ must provide more than mere "conclusions" or "broad and vague" reasons for rejecting an examining physician's opinion.  Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct."  Embrey, 849 F.2d at 421-22.  While not bound by statements about a claimant's condition provided by nonexamining physicians, ALJs must consider such findings as "opinion evidence," and determine the weight to be given such opinions using essentially the same factors for weighing opinion evidence generally.  20 C.F.R. § 404.1527(b), (c); 20 C.F.R. § 404.1527(e); Social Security Ruling 96-6p (ALJ not bound by, but may not "ignore" findings of state agency doctors, and ALJ's decision must explain the weight given to such opinions); Sawyer v. Astrue, 303 Fed. Appx. 453, 455 (9th Cir. 2008) (same); see generally 42 U.S.C. § 405(b)(1) (ALJ's unfavorable decision must, among other things, "set[] forth a discussion of the evidence" and state "the reason or reasons upon which it is based").

## B.     Pertinent Facts

On August 10, 2013, Dr. Ijeoma Ijeaku, a board-eligible psychiatrist, conducted a Complete Psychiatric Evaluation of plaintiff which included a mental status examination ("CSE" or "August 2013 Psychiatric Evaluation").  (AR 269-74).  In the CSE report, Dr. Ijeaku diagnosed plaintiff with "Depressive Disorder"

and "Anxiety Disorder" and opined that plaintiff was only mildly impaired in his ability to understand, remember, and carry out simple instructions, but moderately impaired in multiple other mental abilities (*i.e.*, the ability to understand, remember, and carry out complex instructions, to maintain concentration, attendance, and persistence, to perform activities within a schedule and maintain regular attendance, to complete a normal workday/workweek without interruptions from psychiatric based symptoms, and to respond appropriately to changes in a work setting). (AR 273).

On September 5, 2013, Dr. Nadine J. Genece, a state agency reviewing psychologist, opined, based on review of the August 2013 Psychiatric Evaluation and the other medical evidence of record, that plaintiff retained the mental residual functional capacity to perform only "simple, repetative [sic] tasks on a sustained basis" ("Reviewing Psychologist Opinion"). (AR 68, 72).

On June 12, 2014, Dr. David R. Kauss, an examining psychologist for plaintiff's workers' compensation claim, conducted a Psychological Qualified Medical Evaluation ("QME") of plaintiff which included an interview, a mental status examination, and objective psychological testing of plaintiff, as well as a review of plaintiff's medical records. (AR 329-54). Based on the foregoing, Dr. Kauss diagnosed plaintiff with major depressive disorder and opined that plaintiff had "mild impairment" in activities of daily living, and memory, concentration, persistence, and pace, and "moderate impairment" in social functioning and adaptation to stressful circumstances. (AR 351-52). A "Work Function Impairment Form" appended to the QME report indicated that plaintiff had "slight to moderate" impairment in, among other things, his abilities to comprehend and follow instructions, to maintain a work pace appropriate to a given work load, to perform complex or varied tasks, and to accept and carry out responsibility for direction, control and planning (collectively "Dr. Kauss' Opinions"). (AR 355).
///

9

## C.    Analysis

Here, substantial evidence does not clearly establish that plaintiff did not have a severe mental impairment.  The ALJ's errors cannot be deemed harmless since the decision did not adequately account for all of plaintiff's mental impairments in later steps of the sequential evaluation process.  Cf. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (failure to address particular impairment at step two is harmless if ALJ fully evaluates claimant's medical condition in later steps of sequential evaluation process).  Accordingly, for the reasons discussed below, a remand is appropriate.

First, the ALJ's interpretation of the pertinent medical opinion evidence is not entirely complete and/or accurate.  See generally Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (ALJ may not selectively rely on only the portions of record which support non-disability) (citations omitted); Reddick, 157 F.3d at 722-23 (error for ALJ to paraphrase medical evidence in manner that is "not entirely accurate regarding the content or tone of the record").  Some examples are reflected in the ALJ's evaluation of Dr. Kauss' Opinions.  For instance, the ALJ gave "minimal weight" to Dr. Kauss' Opinions, in part, purportedly because "the moderate limitations" Dr. Kauss found were "largely based on the [plaintiff's] subjective reports of symptoms. . . ."  (AR 26).  While an ALJ may properly give less weight to medical opinion evidence that is based "to a large extent" on a claimant's "self-reports" that the ALJ found "not credible" (Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (internal quotation marks and citations omitted)), here, Dr. Kauss expressly stated that his opinions regarding plaintiff's mental limitations were based not only on "the results of the clinical interview," but also on a "mental status examination, and psychological testing[.]"  (AR 351).  Moreover, the Work Function Impairment Form notes that the "supporting data" underlying the level of impairment identified for the several mental work

///

10

functions included not only plaintiff's "narrative," but also "clinical impressions, test results, [and] record review." (AR 355).

The ALJ also gave minimal weight to Dr. Kauss' Opinions purportedly because they were "generally inconsistent with the [plaintiff's] longitudinal treatment record, which shows no formal treatment with a mental health professional to date." (AR 26). The ALJ wrote that plaintiff had "admitted" at the hearing that the medications he was taking for depression and anxiety "were prescribed by [plaintiff's] workers' compensation treating doctor, who [plaintiff] no longer sees for treatment and whose notes show no objective assessment of the [plaintiff's] mental state." (AR 26) (citing Ex. 1F [AR 256-67]).[5] The ALJ's suggestion that plaintiff's workers' compensation physician, Dr. Johnson, had no objective assessment of plaintiff's mental state is belied by the record. The record instead reflects that Dr. Johnson referred plaintiff to, and obtained a comprehensive psychological evaluation report from a clinical psychologist – Shaelyn Pham, Ph.D. (AR 505-31). As reflected in the June 7, 2013 Comprehensive Psychological Evaluation and Report of Dr. Pham – which she shared with Dr. Johnson – Dr. Pham conducted a mental status examination and extensive objective psychological testing of plaintiff and (1) diagnosed plaintiff with a depressive related disorder; (2) assessed plaintiff's depressive related disorder "to be greater than a mere mild severity rating"; and (3) found that plaintiff needed psychopharmacological intervention and medication management. (AR 526, 529).

The foregoing incorrect characterization of the medical opinion evidence calls into question the validity of both the ALJ's evaluation of the particular medical opinion evidence as well as the ALJ's decision as a whole. See, e.g.

---

[5]More precisely, plaintiff testified that he had not "recently" seen his workers' compensation physician, Dr. Johnson, and that plaintiff's attorney was supposed to be contacted "to see if [plaintiff would be required] to keep seeing [Dr. Johnson] or not." (AR 53).

Regennitter v. Commissioner of Social Security Administration, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support ALJ's decision); Lesko v. Shalala, 1995 WL 263995, *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Second, even if, as defendant suggests (Defendant's Motion at 4-6), the ALJ might have been able to reject the medical opinions regarding plaintiff's mental limitations on other grounds, this Court may not affirm the ALJ's non-disability determination on any such grounds as the ALJ did not do so in the decision. See Garrison, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citation omitted).

Third, in any event, the ALJ's step two determination that plaintiff had no sever mental impairment at all is not supported by substantial evidence. As with Dr. Kauss' Opinions, the ALJ gave "little weight" to Dr. Ijeaku's opinions in the August 2013 Psychiatric Evaluation and the Reviewing Psychologist Opinion. (AR 25-26). In doing so the ALJ appears effectively to have rejected every medical opinion about plaintiff's mental functioning by any treating or examining physician that the ALJ addressed. (AR 25-26). It thus appears that the ALJ's determination regarding whether plaintiff had any severe mental impairment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony, plaintiff's purported lack of "formal treatment with a mental health professional," and the otherwise "limited mental health record." (AR 25-26). Consequently, the ALJ's findings, at least regarding the severity of plaintiff's mental impairments, lack substantial evidence. See, e.g., Padilla v. Astrue, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ may not reject claim at step two "without the support of a physician's medical assessment") (citation and

12

internal quotation marks omitted); see also Tagger v. Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted).

Finally, the Court cannot find the ALJ's errors harmless. As noted above, at least three physicians found that plaintiff's mental impairments may very well have more than a minimal effect on plaintiff's ability to do basic work activities. In addition, at the hearing, the vocational expert testified that there would be no jobs that plaintiff (or a hypothetical individual with the same characteristics as plaintiff) could do, if plaintiff was "off task 20 percent of the time due to pain or psychological symptoms[.]" (AR 61). Therefore, the Court cannot conclude that the ALJ's evaluation of the severity of plaintiff's mental impairments, and in turn, his residual functional capacity assessment for plaintiff, would have been the same absent such errors.

///
///
///
///
///
///
///
///
///
///
///

13

## V.   CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  June 29, 2017

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[6]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted).  Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison, 759 F.3d at 1019 (citation and internal quotation marks omitted).